## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 21-82179-CV-Middlebrooks/Reinhart

THOMAS CASSADY,

        Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

_____/

## REPORT AND RECOMMENDATION ON MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 20, 23)

This matter is before the Court on the parties' cross motions for summary judgment filed by Thomas Cassady ("Plaintiff" or "Mr. Cassady") (ECF No. 20) and Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner") (ECF No. 23). I have reviewed the parties' cross motions for summary judgment and the Plaintiff's reply. Under the limited standard of review that governs this case, I find that the motions are ripe for disposition. For the reasons stated below, Plaintiff's Motion for Summary Judgment (ECF No. 20) should be **GRANTED**, Defendant's Motion for Summary Judgment (ECF No. 23) should be **DENIED**, and the Commissioner's decision should be **REVERSED AND REMANDED**.

## BACKGROUND

On October 16, 2017, Mr. Cassady filed an application for a period of disability and disability insurance benefits ("DIB") and for supplemental security income ("SSI"), alleging a period of disability beginning on September 1, 2015. R. 16.[1] Mr. Cassady had a hearing before an Administrative Law Judge ("ALJ") on June 21, 2019. R. 16. After a subsequent consultative examination of Mr. Cassady by Dr. Roger Arumugam, the ALJ held a supplemental hearing on February 13, 2020. *Id.* Thereafter, the ALJ sent Mr. Cassady for a second consultative examination before rendering her decision. *Id.*

The record contains the following facts adduced largely from Mr. Cassady's testimony at the hearing, his medical records, and the testimony of a vocational expert ("VE").

At the time of his hearing, on June 21, 2019, Mr. Cassady was 51 years old. R. 48. Mr. Cassady has a high school equivalency degree (GED). R. 48. He has past work experience as an automobile dealer, valet, and a material handler. R. 47. Mr. Cassady's disability report lists eczema as his only condition limiting his ability to work. R. 272. During the hearing with the ALJ, Mr. Cassady testified that he also suffers from dermatitis. R. 40.

---

[1] Citations preceded by "R." are to the administrative record filed at ECF No. 18.

Mr. Cassady testified that he can't make a fist or grip, type or write, tie his shoes, button buttons, or mow the lawn. R. 40-42. He testified that he can stand for less than one hour at a time and that he is limited as to how far he can walk, but that he does not have any difficulty with sitting. R. 43-44. He testified that it would be a chore to lift a gallon of milk with gloves on. R. 44. He testified that he can only bend his fingers a little less than halfway before his skin breaks open. R. 45-46. His medical records during the relevant period describe the condition of his hands in various ways: (a) rash, (b) dry, scaly, and cracked, (c) with skin lesions, (d) erythematous patches with fissures, (e) reddened fingertips with slightly inflamed hands, and (f) red purple with flaky skin. R. 20-22, 372, 405, 411, 417, 431, 463. He also had some inflammation or scaly patches on his ankles and elbows during the relevant period. R. 21, 417, 463.

At the hearing, the ALJ heard testimony from VE Cynthia Stevens. The VE described Mr. Cassady's past relevant work positions as an automobile dealer as medium and unskilled work, as a valet as light and unskilled, and as a material handler as heavy and semi-skilled. R. 47. The ALJ then asked the VE seven hypotheticals. As relevant here, the first hypothetical asked whether an individual with the following limitations could perform Mr. Cassady's past relevant work:

> Able to lift and/or carry 20 pounds occasionally and ten pounds frequently, sit for six hours, stand and/or walk for six hours, handle, finger. . . and feel frequently. Climb ramps and stairs occasionally, never climb ladders, ropes or scaffolds. Stoop and crouch frequent[ly], kneel and crawl occasional[ly], unprotected heights, never moving mechanical parts, never operate a motor vehicle, never be in humidity and wetness, being around dusts, odors, fumes or pulmonary irritants, extreme cold or extreme heat, and never work around vibration and also avoid hazards in the workplace.

R. 49. The VE responded that the hypothetical claimant could not perform Mr. Cassady's past work but could perform other jobs. *Id.* The VE testified the hypothetical claimant would be able to be an office helper, a mail clerk, and a delivery marker. R. 49-50.

In the second hypothetical posed to the VE, the ALJ asked her to assume an individual with the same functional abilities as the first hypothetical, except that the hypothetical claimant could handle, finger, and feel occasionally. R. 50. When asked whether this hypothetical claimant could perform the same jobs as the first hypothetical claimant, the VE testified that he would not be able to do so but would be able to perform work as a counter clerk and usher. *Id.* The ALJ subsequently asked the VE whether the additional limitation of no use of detergents of any kind would change the jobs indicated in response to the first or second hypothetical. R. 51. The VE indicated that the limitation would not change her testimony. *Id.*

During cross-examination of the VE, Mr. Cassady's counsel asked whether an individual with the same functional abilities as the first and second hypothetical, except with the additional limitation of needing to wear construction grade gloves, would be able to perform the jobs previously identified. R. 53-54. The VE testified that such a limitation would be considered a special accommodation and would eliminate certain jobs and result in a reduction in the number of other jobs available. R. 54-55. The ALJ stated that if she found that Mr. Cassady needed to use the type

of gloves described, she would find that the limitation would result in an insignificant number of jobs. R. 58.

Based on the testimony, Mr. Cassady's medical records, and two consultative examination reports, on April 30, 2021, the ALJ issued an unfavorable decision finding that Mr. Cassady was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. R. 13-24. The Appeals Counsel denied his request for review on October 15, 2021, rendering the ALJ's decision the "final decision." R. 1-3. Mr. Cassady filed this action in the District Court, requesting judicial review of the ALJ's decision. ECF No. 1.

In his Motion for Summary Judgment, Mr. Cassady seeks reversal of the ALJ's decision that he is not disabled on the grounds that (1) the ALJ failed to include his need to use gloves in his residual functional capacity assessment ("RFC"), (2) the ALJ found that Mr. Cassady could perform jobs with a Specific Vocational Preparation ("SVP") level 2 despite the fact that the Social Security Administration ("SSA") told Mr. Cassady that he could perform work requiring only a very short, on-the-job training period consistent with SVP level 1, (3) the ALJ denied Mr. Cassady's request to cross-examine the author of two adverse post-hearing reports after Mr. Cassady requested a supplemental hearing, and (4) the ALJ and Appeals Council did not have constitutional authority to decide the case because they were delegated authority by a former commissioner who was appointed through a constitutionally invalid structure. ECF No. 20 at 1-2, 10, 16. Because I find that Mr. Cassady's third

argument requires a remand due to a violation of his due process rights, I discuss that issue first.

## STANDARD OF REVIEW

This Court's review of the factual findings in disability cases is limited to an inquiry into whether substantial evidence exists to support the ALJ's findings and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)). If the ALJ's decision is supported by substantial competent evidence from the record as a whole, a court will not disturb that decision. Neither may a court reweigh the evidence nor substitute its judgment for that of the ALJ. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Philips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Although factual findings enjoy such deference, a court is free to review the ALJ's legal analysis and conclusions *de novo*. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## DISCUSSION

### I.     The Five Step Framework

A person who applies for social security disability benefits must prove his disability before being entitled to those benefits. *See* 20 C.F.R. § 404.1512. In determining disability, the ALJ considers a five-step evaluation process. *See*

6

20 C.F.R. § 404.1520. First, the claimant must prove he is not currently engaged in substantial gainful activity. *Id.* Second, the claimant must prove his impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . ." *Id.* Third, the claimant must show he is disabled by proving that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* Before considering step four, the ALJ must determine the claimant's RFC, meaning his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *Id.*; 20 C.F.R. § 404.1545. At step four, the claimant bears the burden of proving that he does not have the RFC to perform past relevant work. 20 C.F.R. § 404.1520. If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering claimant's RFC, age, education, and past work experience, that he is capable of performing other work. *Id.* If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work. *Id.*

## II.    The ALJ's Findings

At step one, the ALJ found that Mr. Cassady has not engaged in substantial gainful activity since September 1, 2015, the alleged onset date. R. 19. At step two, the ALJ found that Mr. Cassady had the following severe impairment that significantly limits his ability to perform basic work activities as required by SSR 85-28: atopic dermatitis (eczema). R. 19. At step three, the ALJ found that Mr. Cassady does not have an impairment or combination of impairments that meets

7

or medically equals the severity of one of the listed impairments of 20 CFR Part 404, Subpart P, App. 1. R. 19. Before proceeding to step four, the ALJ found Mr. Cassady had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds, occasionally climb ramps and stairs, kneel, and crawl, and frequently stoop and crouch. The claimant can frequently handle, finger, and feel. The claimant can never work around unprotected heights, moving mechanical parts, humidity and wetness, extreme cold, extreme heat, vibration, or dust, odors, fumes, and pulmonary irritants. The claimant can never operate a motor vehicle. The claimant needs to avoid hazards in the workplace.

R. 19. At step four, the ALJ found that Mr. Cassady is unable to perform any past relevant work. R. 22. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Mr. Cassady can perform given his age, education, work experience, and RFC. R. 23. Specifically, jobs as an office helper, mail clerk, and delivery marker. R. 24. Accordingly, the ALJ found that Mr. Cassady has not been under a disability since his alleged onset date and denied his request for benefits and SSI. R. 24.

## III.  Whether the ALJ Erred in Denying Plaintiff's Subsequent Request for a Supplemental Hearing to Cross-Examine the Consultative Examiner

Mr. Cassady argues that the ALJ erred in failing to hold a supplemental hearing which permitted him to address the findings in Dr. Arumugam's consultative examination reports and cross examine Dr. Arumugam. ECF No. 20 at 11-16. This failure, Mr. Cassady contends, violated his due process rights. *Id.* Mr. Cassady

8

further argues that the ALJ failed to follow the SSA's internal procedures when denying his request for a supplemental hearing and contends the ALJ was required to follow these procedures because his rights were affected. *Id.* at 15 (citing *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981) ("As a general rule, where the rights of individuals are affected, an agency must follow its own procedure, even where the internal procedures are more rigorous than otherwise would be required.")).

The Commissioner counters that cross-examination is not common in social security cases and that the ALJ appears to have the discretion to determine whether cross is warranted. ECF No. 23 at 12. The Commissioner argues the ALJ was within her discretion to deny Mr. Cassady's request because Mr. Cassady's counsel failed to provide a reason for the cross examination of Dr. Arumugam or explain the information counsel hoped to obtain. *Id.* at 13. The Commissioner further argues that Mr. Cassady bases his procedural due process claim on a policy of the SSA which is not a regulation, has no legal force, does not bind the ALJ, and cannot be a basis for remand. *Id.* at 13-15 (citing *Schweiker v. Hansen*, 450 U.S. 785, 789-90 (1981)). Finally, the Commissioner argues that even if Mr. Cassady had a due process right to a supplemental hearing to cross examine Dr. Arumugam, he is not entitled to a remand because he has not shown that he was prejudiced by the ALJ's decision not to allow cross-examination. ECF No. 23 at 14.

For the reasons discussed, I find that Mr. Cassady's due process rights were violated. During the June 21, 2019, hearing, the ALJ explained that she would send

9

Mr. Cassady for a consultative examination. R. 46. Dr. Arumugam examined Mr. Cassady on July 18, 2019, and his report was proffered to Mr. Cassady's counsel on July 24, 2019 ("First Report"). R. 322, 430. The proffer letter indicated that Mr. Cassady could request a supplemental hearing or an opportunity to question the author of the report, but that the ALJ had the discretion to grant or deny the request. R. 322. On August 2, 2019, Mr. Cassady's counsel objected to the First Report arguing that the report conflicted with Dr. Arumugam's examination findings and the evidence in the record and requested a supplemental hearing to address the adverse findings in the report, unless the ALJ reached a favorable decision. R. 327. A five-minute supplemental hearing was held on February 13, 2020 ("Supplemental Hearing"). R. 33-36. At the hearing, Mr. Cassady's counsel objected to the admission of the First Report without the opportunity to cross-examine Dr. Arumugam. R. 33. Given the objection, but without discussing the merits of the objection, the ALJ stated that she would send Mr. Cassady for a second consultative examination and "go from there." R. 33-35.

Dr. Arumugam's second consultative examination report was proffered to Mr. Cassady's counsel on March 22, 2021 ("Second Report"). R. 333. The second proffer letter indicated that if Mr. Cassady requested a supplemental hearing, the ALJ would grant the request unless she decided to issue a fully favorable decision. *Id*. The letter further indicated that Mr. Cassady could request an opportunity to question Dr. Arumugam, but that the ALJ retained the discretion to determine

whether the questioning was needed to inquire fully into the issues. *Id.* In response to the proffer, counsel objected to the admission of the Second Report unless the ALJ was going to enter a favorable decision and asked that Dr. Arumugam be made available for cross examination. R. 232. One month after counsel's request, the ALJ issued her decision and denied counsel's request to cross-examine Dr. Arumugam because "the request [did] not state why the representative would like to cross-examine the physician or what information they hoped to obtain with any specificity." R. 16. The ALJ then denied Mr. Cassady's request for DIB and SSI. R. 24.

The Eleventh Circuit has held that "it violates a claimant's right to procedural due process for the Secretary to deny a claimant Social Security benefits based upon post-hearing medical reports without giving the claimant an opportunity to subpoena and cross-examine the authors of such reports." *Demenech v. Sec'y of the Dept. of Health & Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (first citing *Hudson v. Heckler*, 755 F.2d 781, 784 (11th Cir. 1985); then citing *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981)). The Court specified that "where the ALJ substantially relies upon a post-hearing medical report that directly contradicts the medical evidence that supports the claimant's contentions, cross-examination is of extraordinary utility." *Demenech*, 913 F.2d at 885 (citing *Wallace v. Bowen*, 869 F.2d 187, 192 (3rd Cir. 1989)). The Eleventh Circuit has clarified that an ALJ does not violate a claimant's due process rights when she denies a request for a supplemental hearing if (1) she does not substantially rely on the post-hearing report to deny

benefits, (2) the report at issue was consistent with other consultative reports, and (3) the report contradicted only conclusory and unsupported findings of the claimant's treating physicians. *James v. Barnhart*, 117 Fed. Appx. 875, 877 (11th Cir. 2006). Similarly, a claimant's due process rights are not violated if they were provided some other opportunity to meaningfully challenge or rebut the findings of the post-hearing medical report. *See Martz v. Comm'r of Soc. Sec. Admin.*, 649 Fed. Appx. 948, 963 (11th Cir. 2016) (holding that plaintiff's due process rights were not violated by the ALJ's denial of a request to cross-examine a doctor because the Plaintiff was permitted to submit interrogatories to confront the evidence adverse to her claim); *Santos v. Soc. Sec. Admin., Comm'r*, 731 Fed. Appx. 848, 854 (11th Cir. 2018) (holding that a pre-hearing report did not violate claimant's due process rights because the ALJ stated she would take the claimant's criticism of the report into account and gave the claimant the opportunity to submit written interrogatories as an alternative to cross-examination).

The Commissioner argues that *Demenech* is inapplicable because the ALJ did not substantially rely on Dr. Arumugam's reports because the ALJ found the reports to be "only partially persuasive." ECF No. 23 at 14. I find this argument to be unconvincing. Dr. Arumugam's reports were not merely cumulative of other evidence in the record, but rather provided the basis for several of the ALJ's RFC findings which led to the ALJ's decision to deny Mr. Cassady disability benefits. For example, the ALJ found that Mr. Cassady could frequently handle, finger, and feel. R. 19. This was a key limitation because the VE testified that an individual who could only

occasionally handle, finger, and feel would not be able to perform the same jobs as a person who could frequently perform those manipulations and the limitation would lead to "very limited jobs." ECF No. 24 at 7; R. 50. The ALJ further found that Mr. Cassady could only occasionally climb ramps and stairs, kneel, and crawl. R. 19. The only evidence of the above capabilities identified in the ALJ's decision is Dr. Arumugam's Second Report. R. 22. In addition, the ALJ found that Mr. Cassady could frequently stoop and crouch. R. 19. The only cited evidence of this capability is Dr. Arumugam's First Report.[2] R. 21. Moreover, the ALJ relied on Dr. Arumugam's First and Second Reports to partially discredit the grip strength findings of one of Mr. Cassady's physicians, PA Heather Brew.[3] R. 22. It is clear from the ALJ's decision that she substantially relied on Dr. Arumugam's reports.

Next, the Commissioner argues that the ALJ properly exercised her apparent discretion to deny Mr. Cassady's request to cross examine Dr. Arumugam because Mr. Cassady's counsel did not give a reason why the request should be granted or explain what information he hoped to obtain. ECF No. 23 at 13. The Commissioner further argues that the cross-examination request, which was in response to the

---

[2] Notably, some of Dr. Arumugam's findings regarding these capabilities differed slightly between the First and Second Reports. For example, the Second Report found that Mr. Cassady could only occasionally stoop and crouch. R. 22.

[3] The ALJ ultimately found PA Brew's opinion to be unpersuasive because it was inconsistent with the medical evidence of record and appeared to be based on Mr. Cassady's subjective complaints. R. 22.

Second Report, did not refer to counsel's letter responding to the First Report or the challenges to Dr. Arumugam's report that counsel identified in the first letter. *Id.* The Commissioner also highlights the fact that the first request sought a supplemental hearing to address the adverse findings in the First Report, rather than cross-examination of Dr. Arumugam, to seemingly imply that the first request would likewise fail to support a request to cross-examine the doctor; therefore, the Commissioner argues, the ALJ properly exercised her discretion when she denied Mr. Cassady's request. *Id.*

The fundamental requirement of due process is the "opportunity to be heard at a meaningful time and in a meaningful manner." *Martz*, 649 Fed. Appx. at 962 (citations omitted). This is not a case where the claimant failed to seek an opportunity to challenge a post-hearing report or was otherwise permitted to challenge findings contrary to his claim. *C.f. Martz*, 649 Fed. Appx. 948 at 963; *Santos*, 731 Fed. Appx. at 854. Mr. Cassady was not given a meaningful opportunity to challenge or rebut Dr. Arumugam's First or Second Report, despite counsel's clear requests to do so. Although the First Report is not a post-hearing report with respect to the five-minute Supplemental Hearing, the Second Report was clearly a post-hearing report. Additionally, to suggest that the Supplemental Hearing provided Mr. Cassady with a meaningful opportunity to challenge the First Report would be to ignore the ALJ's clear failure to engage Mr. Cassady's objections before sending him for a second examination. The record is clear; Mr. Cassady was not afforded an opportunity to

14

challenge either of the two reports the ALJ relied on to deny his request for benefits and SSI, in contravention of his right to due process.

The Commissioner argues that Mr. Cassady is not entitled to a remand, even if his due process rights were violated, because he has failed to show that he has been prejudiced. ECF No. 23 at 14 (citing *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) ("[T]here must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record.")). Mr. Cassady argues that he was prejudiced because the ALJ relied on key limitations in Dr. Arumugam's reports — such as Mr. Cassady's ability to frequently handle, finger, and feel — to reach an adverse decision. ECF No. 24 at 7. Mr. Cassady further argues that if the ALJ limited Mr. Cassady to anything less than frequent handling, fingering, and feeling, the jobs the ALJ found Mr. Cassady capable of performing would've been precluded and the number of potential jobs Mr. Cassady could perform would have been reduced. ECF No. 24 at 7-8. Thus, such a finding could have changed the ALJ's ultimate disability decision.

I find that Mr. Cassady was prejudiced by his inability to challenge or rebut Dr. Arumugam's reports or test the credibility of their author. *See Martin-Johnson v. Colvin*, No. 14-CV-1331, 2016 WL 890084, at *6 (M.D. Fla. Mar. 9, 2016) (finding prejudice where the ALJ relied on a VE's responses to interrogatories and the credibility of that testimony was untested because the ALJ denied requests for cross-

examination and a supplemental hearing). Because the ALJ relied heavily on Dr. Arumugam's reports when denying Mr. Cassady benefits, and it is impossible for the Court to determine what the evidence would have been if Mr. Cassady were afforded a meaningful opportunity to challenge the reports, I find that the prejudice to Mr. Cassady warrants a remand.[4]  Accordingly, I recommend that the District Court GRANT Mr. Cassady's Motion for Summary Judgment on these grounds and remand the case to the Commissioner pursuant to sentence four of § 405(g) with instructions to the ALJ to conduct a supplemental hearing to provide Mr. Cassady the opportunity to cross-examine Dr. Arumugam or otherwise challenge the findings in his post-hearing reports.[5]

## IV.  Whether the ALJ Erred in Omitting Plaintiff's Alleged Need to Use Gloves in the RFC Assessment

Mr. Cassady next argues the ALJ's decision should be overturned because the ALJ failed to include his need to use gloves in the RFC assessment and failed to otherwise explain why a glove limitation was not included in the assessment. ECF No. 20 at 7-10. Specifically, Mr. Cassady argues that the ALJ failed to comply with the requirement that she explain the weight given obviously probative exhibits.

---

[4] Because I recommend that Mr. Cassady's case be remanded on due process grounds, I need not determine whether the ALJ's alleged violation of the SSA's internal Hearings, Appeals, and Litigation Manual justifies a remand.

[5] Although I recommend that Mr. Cassady's Motion for Summary Judgment be granted for the reasons stated in Section III, in the interest of providing the District Court with a thorough analysis of the issues, I will also address Mr. Cassady's other arguments in support of reversal.

ECF No. 20 at 8-9. Mr. Cassady further argues that his need to wear gloves was supported by his testimony and the record, and that the ALJ acknowledged at the hearing that a need to wear gloves would result in a lack of significant jobs in the national economy. *Id.* at 8-9.

The Commissioner argues that substantial evidence supports the ALJ's decision not to include the use of gloves in Mr. Cassady's RFC assessment. ECF No. 23 at 6-10. The Commissioner contends that the ALJ implicitly decided not to include a gloves limitation in the RFC "because the severity of Plaintiff's allegations was inconsistent with the medical evidence of record." *Id.* at 7. The Commissioner further argues that the ALJ's decision was supported by several factors, including: Dr. Arumugam's opinion that there was no evidence of functional impairment at the time of his examination, Mr. Cassady's gaps in treatment, Mr. Cassady's positive response to treatment when he was medication compliant, the lack of medical provider opinion or recommendation that Mr. Cassady needed to wear gloves when handling, fingering, or feeling objects, and the lack of record evidence that wearing gloves was medically necessary. *Id.* at 8-10.

A court may reverse an ALJ's decision "only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied." *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). An RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work

despite his impairments." *Lewis*, 125 F.3d at 1440 (citing 20 CFR § 404.1545(a)). The ALJ, alone, is responsible for assessing Mr. Cassady's RFC. 20 C.F.R. § 404.1546(c).

The ALJ's decision not to include a glove limitation in Mr. Cassady's RFC was supported by substantial evidence. When formulating an RFC, "an ALJ is not required to include limitations . . . which he rejects as not supported by the record." *J.M.S. v. Comm'r of Soc. Sec.*, No. 21-CV-00323, 2022 WL 4534966, at *9 (M.D. Ga. Sept. 28, 2022) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)). Here, the ALJ rejected any limitations not included in the RFC as unsupported by the record. R. 22.

To explain her reasoning behind the RFC assessment, the ALJ outlined Mr. Cassady's testimony, analyzed his medical records, and explained the weight she gave each medical opinion. R. 20-22. The ALJ specifically referenced Mr. Cassady's allegations that he could only lift a loaf of bread without wearing gloves, that it would be a chore to lift even a gallon of milk with gloves on, and that he needed to wear thick construction leather gloves. R. 20. The ALJ also acknowledged that Mr. Cassady informed a physician in 2018 that he had to wear leather gloves to do activities such as lawn work. R. 21. She likewise discussed his eczema and dermatitis diagnoses and the various physician statements regarding the condition of his hands. R. 20-22.

After outlining Mr. Cassady's testimony, the ALJ found that Mr. Cassady's "statements concerning the intensity, persistence, and *limiting effects* of [his]

18

symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 20 (emphasis added). The ALJ acknowledged that Mr. Cassady has been "treated for atopic dermatitis sporadically during the period at issue and . . . accordingly restricted him to performing light work with some additional postural, manipulative, and environmental limitations;" however, she found that the severity of Mr. Cassady's allegations was inconsistent with the medical evidence of record. R. 20. She then articulated findings regarding each of Mr. Cassady's limitations, cited to the relevant record evidence, and specifically stated that "no additional limitations are supported." R. 19-22.

For the foregoing reasons, the ALJ's decision reflects that she considered Mr. Cassady's medical condition as a whole and analyzed all of the evidence and her decision sufficiently explains the weight she gave to obviously probative exhibits. *See Dyer*, 395 F.3d at 1211 ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, as was *not* the case here, is not a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.") (citations omitted); *cf. Cowart*, 662 F.2d 731 at 735 (remanding case where the ALJ's decision included only a conclusory statement that he carefully considered the evidence and gave the evidence the weight he believed accorded to it).

Unfortunately, due to what appears to be a typographical error, the ALJ's finding regarding Mr. Cassady's lack of additional limitations is less than exemplary. Specifically, the ALJ stated the following:

> The claimant has been noted to have lesions on his hands that would support the inclusion of some manipulative limitations. **Nonetheless, no additional limitations are supported** the claimant had Dr. Arumugam reported the claimant had normal bilateral handgrip and was able to make a fist, extend all fingertips, button a shirt, and turn doorknobs.

R. 22 (emphasis added).

Despite this typographical error, the ALJ's finding that no additional limitations were supported by the record, such as Mr. Cassady's need to use gloves, is supported by substantial evidence. Importantly, the record does not show that any medical provider opined that Mr. Cassady's ability to work was limited by his need to wear thick construction gloves or that gloves were recommended to accommodate his eczema. Other than Mr. Cassady's record from Highlands Health Department that references his self-reported need to use gloves for lawn work (R. 415), the Court found only three references to "gloves" in his medical records:

- In 2015, an emergency room doctor advised Mr. Cassady to "apply ointment and wear gloves all night" and a nurse, during the same visit, advised him to "cover lesions with Neosporin and apply gloves." R. 382-84.

- In 2018, an advanced registered nurse practitioner at Highlands Health Department advised Mr. Cassady to "avoid contact with leather, gloves may be triggering symptoms." R. 417.

20

- In 2020, PA Brew advised Mr. Cassady to use "Gloves in a bottle – daily to hands."[6] R. 460.

Mr. Cassady's own testimony likewise fails to demonstrate a need to always wear gloves. Instead, the record shows that Mr. Cassady uses gloves, or says that he would need to use gloves, to perform activities such as driving, lawn work, retrieving milk from the freezer, and washing dishes. R. 42, 44, 389, 415. He did not testify that he needed gloves for all activities.

Mr. Cassady cites *Hadnot v. Astrue*, No. C 07-5504 PJH, 2008 WL 5048428 (N.D. Ca. Nov. 25, 2008) in support of his argument that the ALJ should have included his need to use gloves in his RFC. ECF No. 20 at 9. In *Hadnot*, the ALJ asked the VE two hypotheticals; one that omitted a glove limitation and a second that included a glove limitation. 2008 WL 5048428, at *11. The VE testified that the claimant could perform her past relevant work when the glove limitation was omitted but could not do so if the glove limitation was considered. *Id.* However, the VE testified that other jobs existed in the national and regional economy that the claimant could perform, even with a glove limitation. *Id.* at *12.

---

[6] Based on the Court's independent research, "Gloves in a bottle" is a lotion, not a brand of gloves. GLOVES IN A BOTTLE, https://www.glovesinabottle.com/ (last visited February, 17, 2023).

The *Hadnot c*ourt held that the ALJ erred when it relied on the VE's response to the hypothetical that did not include the claimant's glove limitation because the claimant's sensitive skin condition was a supported limitation and the ALJ acknowledged the claimant's need to wear gloves "as often as possible." *Id.* at *12. The Court ultimately held that the ALJ's reliance on this testimony was harmless error because the VE's testimony reflected that considering all of the claimant's limitations and restrictions, she could still perform other work that existed in significant numbers in the economy. *Id.*

In the present case, the VE testified that if Mr. Cassady needed to wear industrial type gloves, the pool of available jobs would decrease significantly. R. 54-58. The ALJ advised the parties that if she found that Mr. Cassady needed to wear the type of gloves described, she would consider it a special accommodation and find that the limitation resulted in an insignificant number of jobs. R. 58. However, as previously discussed, the ALJ subsequently found that Mr. Cassady only had the limitations identified in the RFC. The ALJ did not find that Mr. Cassady needed to wear gloves "as often as possible" or in any situation. Accordingly, the facts of this case are distinguishable from *Hadnot.*

When reviewing an ALJ's decision, the court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Dyer*, 395 F.3d at 1210 (citing *Philips*, 357 F.3d at 1240 n.8). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof

preponderates against it." *Dyer*, 395 F.3d 1206 at 1210. Although the ALJ's finding that the record did not support Mr. Cassady having any limitations other than those included in his RFC could have been clearer, her finding was supported by substantial evidence. Because the ALJ found the glove limitation to be unsupported, she was not required to include that limitation in Mr. Cassady's RFC.[7] *See Crawford*, 363 F.3d at 1161. Accordingly, I recommend that the Court deny Mr. Cassady's Motion for Summary Judgment on the grounds that the ALJ failed to include his alleged glove limitation in his RFC.

**V.    Whether the ALJ Erred in Failing to Analyze the SSA's Determinations Regarding Mr. Cassady's Ability to Perform Work that Equated to an SVP Level 1**

Next, Mr. Cassady argues that the ALJ's finding that he could perform jobs with an SVP level 2 was error given that the SSA advised Mr. Cassady that he could perform work equating to an SVP level 1 when it denied his application for benefits. ECF No. 20 at 10-11. The SSA's initial and reconsidered denial of Mr. Cassady's benefits indicated that he could perform work which requires "only a very short, on-

---

[7] Notably, Dr. Arumugam did not render an opinion regarding Mr. Cassady's alleged need to wear gloves, other than generally opining that there was no evidence of a functional impairment at the time of the examination. R. 22. Excluding this finding by Dr. Arumugam, the record still contains substantial evidence to support the ALJ's decision not to include a glove limitation in the RFC for the reasons stated. The Court's recommendation on this claim, however, is not intended to limit the ALJ's ability to find that Mr. Cassady has a glove limitation on remand.

the-job training period." *Id.* at 10; R. 95, 105.[8] Mr. Cassady argues that this
description equates to work with an SVP level 1 which requires training be performed
through a short demonstration only. ECF No. 20 at 10. Mr. Cassady contends that
the ALJ's decision was not supported by substantial evidence because the ALJ failed
to identify jobs at SVP level 1 that Mr. Cassady could perform, failed to explain why
it "ignored" the SSA's statements regarding Mr. Cassady's ability to perform work
that equated to an SVP level 1, and found that Mr. Cassady could perform work that
is characterized as SVP level 2 despite the SSA's statements. *Id.* at 10-11. Mr.
Cassady does not cite any authority to support his argument. Instead, he cites a single
case and two websites that describe work that qualifies as SVP level 1 and 2. *Id.*

The Commissioner counters that the statements referenced by Mr. Cassady
are from two Explanations of Determination, which do not bind the ALJ or direct her
to make a certain finding and need not be considered by the ALJ in assessing whether
Mr. Cassady is disabled. ECF No. 23 at 10-12. The Commissioner further argues that
pursuant to the SSA's regulations, the Explanations of Determination issued at the
initial and reconsideration levels were not binding because Mr. Cassady subsequently

_____

[8] Although Mr. Cassady cites pages 95 and 99 of the administrative record, the
appropriate citations are pages 95 and 105. Mr. Cassady's argument cites only to
determinations made regarding his request for DIB and does not cite to
determinations regarding his request for SSI. However, the Court's analysis would
be the same with respect to his request for SSI, as the applicable SSI regulations
mirror the DIB regulations cited.

24

sought reconsideration of each decision, including a hearing in front of an ALJ which ultimately resulted in a decision. *Id.* at 12.

As the Commissioner notes, the SSA's regulations characterize "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination" about whether a claimant is disabled as "[e]vidence that is inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(2). Additionally, the regulations state that the SSA "will not provide any analysis about how [it] considered such evidence in [its] determination or decision." *Id.*

The Explanations of Determination Mr. Cassady argues the ALJ should have considered were prepared by state agency disability examiners. *See SSA Program Operations Manual System (POMS) DI 24501.001B(1)(d)(1-2)*, SSA.GOV, https://secure.ssa.gov/poms.nsf/lnx/0424501001 (last visited February, 17, 2023); *see also Martinez v. Kijakazi*, No. 20-CV-1025, 2021 WL 4482616, at *14 (M.D. Fla. Aug. 23, 2021), *report and recommendation adopted*, 2021 WL 4478248 (M.D. Fla. Sept. 30, 2021)). Accordingly, the statements within the Explanations of Determination were neither valuable nor persuasive and the ALJ had no duty to analyze how it considered the explanations. *See Daly v. Comm'r of Soc. Sec.*, No. 20-CV-284, 2021 WL 3668533, at *4 (M.D. Fla. July 29, 2021), *report and recommendation adopted*, 2021 WL 3666229 (Aug. 18, 2021) (citations omitted) (ruling in favor of the Commissioner on the same argument raised here and holding that an ALJ need not

25

provide analysis about whether Explanations of Determinations were considered); *Martinez*, 2021 WL 4482616 at, *14.

Moreover, SSA regulations further provide that an "initial determination is binding unless [the claimant] request[s] a reconsideration within the stated time period" or the initial determination is revised. 20 C.F.R. § 404.905. Similarly, a reconsidered determination is binding unless the claimant "requests a hearing before an administrative law judge within the stated time period and a decision is made." 20 C.F.R. § 404.921(a).

Here, Mr. Cassady sought reconsideration of the SSA's initial determination thereby rendering the initial determination non-binding. R. 103-104; 20 C.F.R. § 404.905. Mr. Cassady subsequently appealed the reconsideration determination and requested a hearing before an ALJ. R. 119. The ALJ held a hearing and issued a decision, thereby rendering the SSA's reconsidered determination non-binding. R. 24; 20 C.F.R. § 404.921(a). Accordingly, the statements Mr. Cassady cites regarding his ability to perform work which requires "only a very short, on-the-job training period" were not binding on the ALJ. *See Martinez*, 2021 WL 4482616, at *14. As the decisions were not binding on the ALJ, the ALJ did not err in failing to consider these statements in her decision regarding Mr. Cassady's ability to perform work at an SVP level 2. *Id.*

For the foregoing reasons, I recommend that the Court deny Mr. Cassady's Motion for Summary Judgment on the grounds that the ALJ failed to analyze the SSA's determinations regarding Mr. Cassady's ability to perform work that equated to an SVP level 1.

## VI. Whether the For Cause Removal Structure of the Commissioner of the SSA Violates Separation of Powers and Renders the Decisions of the ALJ and Appeals Council Constitutionally Defective

Mr. Cassady asserts a constitutional challenge to the authority of the former Commissioner, Andrew Saul, and by extension the authority of the ALJ and Appeals Council who decided his case, based on Supreme Court case *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (Jun. 20, 2020). ECF No. 20 at 16-19. Mr. Cassady further argues that the ALJ decided the case using a "presumptively inaccurate legal standard" because the ALJ decided the case based on regulations promulgated by the former Commissioner. *Id*. at 17. Mr. Cassady seeks a new hearing before a new ALJ who does not suffer from the "unconstitutional taint of having heard and decided this case when the ALJ had no lawful authority to do so." *Id*. at 19.

In *Seila Law*, the Supreme Court found that the structure of the Consumer Financial Protection Bureau ("CFPB") violated the separation of powers. *Seila Law*, 140 S. Ct. at 2192. The Court ultimately held that, in light of the President's "ultimate responsibility" for use of the executive power and "active obligation to supervise" the officers to whom he has delegated authority, limitations on the President's ability to remove the Director of the CFPB thwarts that responsibility. *Id*. at 2203–04 ("The

CFPB Director's insulation from removal by an accountable President . . . render[s] the agency's structure unconstitutional."). More recently, the Supreme Court cemented its findings as to the President's removal powers in *Collins v. Yellen*, 141 S. Ct. 1761, 1783-84 (2021). There, the Court held that a similar statutory provision protecting the Director of the Federal Housing Finance Agency ("FHFA") from removal except for cause was a violation of the separation of powers. *Id*. at 1783.

In *Collins*, the Court also held that in challenging a statutory removal restriction, a plaintiff need not show that the claimed injury is traceable to the challenged provision of law to show standing. *Id*. at 1779. Instead, it is sufficient for a plaintiff to allege injury based on the "'allegedly unlawful conduct' of the defendant." *Id*. In order to obtain retrospective relief, however, a plaintiff must show that the unconstitutional provision in question "inflict[ed] compensable harm." *Id*. at 1788-89. The Court opined that an example of such harm could be if, for example, the President attempted to remove a director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal, or if the President publicly stated displeasure with the Director and that he would remove the Director if not for the statute. *Id*. at 1789. Ultimately, the Court remanded the case for resolution of that very question: whether the provision had inflicted compensable harm on plaintiffs. *Id*.

Applying the holdings in *Seila Law* and *Collins* to the Commissioner of Social Security, and in keeping with holdings in districts throughout the country, I agree with Mr. Cassady that the provision for removal of the Commissioner, 42 U.S.C.

28

§ 902(a)(3), "suffers from the same defect as the removal provisions at issue in *Seila Law* and *Collins*" and therefore violates the separation of powers. *See Perez-Kocher v. Comm'r of Soc. Sec.*, No. 6:20-cv-2357, 2021 WL 6334838, at *3 (M.D. Fla. Nov. 23, 2021), *report and recommendation adopted*, 2022 WL 88160 (M.D. Fla. Jan. 7, 2022); *see also Michele T. v. Comm'r of Soc. Sec.*, 572 F. Supp. 3d 1039, 1044 (W.D. Wash. 2021) (finding that 42 U.S.C. § 902(a)(3) violates separation of powers); *Lisa Y. v. Comm'r of Soc. Sec.*, 570 F. Supp. 3d 993, 1001 (W.D. Wash. 2021) (finding same); *Tafoya v. Kijakazi*, 551 F. Supp. 3d 1054, 1058 (D. Colo. 2021). However, to warrant retrospective relief such as remand, Mr. Cassady must show that the removal restriction inflicted compensable harm on him. *Collins*, 141 S. Ct. at 1788-89.

In his efforts to show that he is entitled to a new hearing due to the unconstitutional removal provision, Mr. Cassady confuses the applicable remedies for violations of the President's removal and appointment powers. "In the Appointments Clause context, the Supreme Court has held that the appropriate remedy for an adjudication tainted with an appointments violation is a new hearing before a properly appointed official that is different from the prior official." *Crowley v. Kijakazi*, No. 20-62287-CIV, 2022 WL 2805509, at *8 (S.D. Fla. June 30, 2022) (J. Strauss) (quotations omitted) (citing *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2055 (2018)), *report and recommendation adopted*, 2022 WL 2802664 (S.D. Fla. July 18, 2022) (J. Cohn). In the context of "a statute that unconstitutionally purports to restrict the President's removal power with respect to an official," however, the actions taken by

that official (and those under him) are not automatically void actions "where there is no basis to conclude that the official lacked the authority to hold his position." *Id.*; *see also Collins*, 141 S. Ct. at 1787 (holding that there was no reason to regard any of the actions taken by a properly appointed and confirmed director as void even though a statute unconstitutionally limited the President's authority to remove the director); *see also Collins*, 141 S. Ct. at 1788 & n.23 (reiterating that there is no basis for concluding that the head of an agency with a for cause removal provision lacked the authority to carry out the functions of the office).

Here, Mr. Cassady does not make an Appointments Clause challenge and provides no basis to conclude that the Commissioner lacked the authority to hold his position.[9] Accordingly, the unconstitutionality of the removal provision does not render the Commissioner's delegation of authority to the ALJ and Appeals Council ineffective or render the regulations promulgated by the former Commissioner unauthorized. Instead, the issue is whether Mr. Cassady has suffered a compensable harm due to the unconstitutional removal provision. *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) ("*Collins* is controlling with respect to the remedy for any unconstitutionality in the removal provisions.").

---

[9] Mr. Cassady's motion claims the former Commissioner was "appointed through the identical constitutionally invalid structure" discussed in *Seila Law* but challenges the former Commissioner's authority based on the removal provision in 42 U.S.C. § 902(a)(3), not the Appointments Clause.

The Commissioner argues that Mr. Cassady has not shown that the President's supposed inability to remove the former Commissioner without cause affected the ALJ's disability benefits decision or the Appeals Council's denial of review of his claim, or otherwise caused him harm. ECF No. 23 at 15-21. Because Mr. Cassady cannot show a nexus between the denial of his benefits claim and the President's supposed inability to remove the former Commissioner without cause, the Commissioner argues Mr. Cassady is not entitled to a rehearing on his claim. [10] *Id.* The Commissioner further argues that the harmless error doctrine, de facto officer doctrine, the rule of necessity, and broad prudential considerations demonstrate that Mr. Cassady is not entitled to relief unless he shows harmful error in the ALJ's decision. *Id.* at 21-25.

I find that Mr. Cassady has not sufficiently alleged that the removal provision of Section 902(a)(3) resulted in compensable harm. Mr. Cassady alleges he suffered from the following "egregious injuries:"

> (1) He did not receive a constitutionally valid hearing and adjudication from an ALJ to which he was entitled; (2) he did not receive a constitutionally valid decision from an ALJ to which he was entitled; (3) he received an unfavorable decision from this constitutionally illicit ALJ adjudication process; (4) he did not receive a constitutionally valid

---

[10] The Commissioner also argues that President Biden's decision to remove Andrew Saul as the Commissioner in 2021 does not establish the compensable harm Mr. Cassady needs to show to support his claim. ECF No. 23 at 20. However, Mr. Cassady does not make this argument. Instead, he argues that the firing of Mr. Saul is evidence that the government recognizes the unconstitutionality of the removal provision, which is not contested by the Commissioner. ECF No. 20 at 18.

adjudication process from SSA's Appeals Council to which he was entitled; (5) he did not receive a constitutionally valid determination by the Appeals Council to which she was entitled; (6) he received an unfavorable determination from this constitutionally illicit Appeals Council adjudication process.

ECF No. 20 at 19.

Magistrate Judge Strauss addressed a nearly identical argument regarding compensable harm from the plaintiff in *Crowley*, and I agree with his reasoning and conclusion. 2022 WL 2805509, at *9 n.7 (collecting cases). Judge Strauss found the alleged specific injuries to be insufficient: "these overgeneralized, conclusory claims, which are all reworded expressions of the same alleged defect, flatly fail to establish harm." *Id.* at *9. As in *Crowley*, Mr. Cassady fails to establish a nexus between the removal restriction and the ALJ's decision to deny his claim for benefits, or otherwise show that the removal limitation caused him any harm. Accordingly, I recommend that the Court deny Mr. Cassady's Motion for Summary Judgment on the grounds that his constitutional rights were violated by the removal provision of 42 U.S.C. § 902(a)(3).[11]

## VII.    Deadline for Attorneys' Fees Motion Pursuant to 42 U.S.C. § 406(b)

Finally, Mr. Cassady asks the Court to state in the final judgment that if he ultimately prevails on remand, he must file any motion for attorneys' fees under 42 U.S.C. § 406(b) within fourteen days of an Award Notice awarding benefits.

---

[11] Because I find that Mr. Cassady has failed to show compensable harm, I need not address the Commissioner's remaining arguments.

ECF No. 20 at 20 (citing *Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 n.2 (11th Cir. 2006) (suggesting that the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406(b) is to move the district court for an extension of the 14 day period described in the rule when the district court remands the case)); *see also Blitch v. Astrue*, 261 Fed. Appx. 241, 1, n.1 (11th Cir. 2008). The Commissioner does not oppose or otherwise respond to this request. Accordingly, I recommend that the Court grant this request.

## <u>RECOMMENDATION</u>

For the foregoing reasons, the undersigned **RECOMMENDS** that the District Court **GRANT** Plaintiff's Motion for Summary Judgment (ECF No. 20), **DENY** Defendant's Motion for Summary Judgment (ECF No. 23), and **REVERSE AND REMAND** the Commissioner's decision with instructions to the ALJ to conduct a supplemental hearing to provide Mr. Cassady the opportunity to cross-examine Dr. Arumugam or otherwise challenge the findings in his post-hearing reports. I further recommend that the final judgment remanding the case to the Commissioner state that if Mr. Cassady ultimately prevails after remand, he must file any motion for attorneys' fees under Section 406(b) within 14 days of an Awards Notice awarding benefits.

## <u>NOTICE OF RIGHT TO OBJECT</u>

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Donald M. Middlebrooks, United States

District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

 **IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THEY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

 **DONE AND SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 21st day of February, 2023.

              BRUCE E. REINHART
              United States Magistrate Judge